**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
**ESTHER CANALES, individually as Mother**
**and Natural Guardian of Infant, E.O.M.,**

                      **Plaintiffs,**                      **MEMORANDUM**
                                                        **AND ORDER**

                    **-against-**                           **19-CV-834 (EK)**

**UNITED STATES OF AMERICA, et al.,**

                      **Defendants.**
------------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

In a letter-motion dated January 19, 2021, plaintiff Esther Canales, on behalf of herself and infant plaintiff E.O.M. (the "infant plaintiff") (collectively, "plaintiffs"), seeks leave to serve supplemental expert reports in this medical malpractice action brought against defendants NYU Lutheran Hospital (a/k/a NYU Langone-Brooklyn), Dr. Kayla Cagle-Colon, Dr. Jacqueline F. Ford (the "NYU Langone defendants"), and the United States of America (the "government") (collectively, "defendants"). See Letter Motion for Leave to Supplement (Jan. 21, 2021) ("Pl. Mot."), Electronic Case Filing Docket Entry ("DE") #46. Defendants largely oppose plaintiffs' motion. See [Govt.] Memorandum in Opposition (Jan. 25, 2021) ("Govt. Opp."), DE #48; [NYU Langone defendants'] Memorandum in Opposition (Jan. 25, 2021) ("NYU Opp."), DE #49. For the reasons that follow, plaintiffs' motion for leave to serve supplemental expert reports is denied in large part.

## BACKGROUND

This case was brought against the United States pursuant to the Federal Tort Claims

Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.*, and against the NYU Langone defendants pursuant to the Court's supplemental jurisdiction, 28 U.S.C. § 1367, in connection with the delivery of the infant plaintiff, who suffers from severe cerebral palsy.  At the initial conference held before then-Magistrate Judge James Orenstein on August 6, 2019, the Court set February 7, 2020 as the deadline to complete all discovery, fact and expert.  See Minute Entry (Aug. 6, 2019), DE #25.  At the parties' request, the discovery deadline was extended four times -- the last extension to October 7, 2020.  See DE #27, DE #32, DE #34, DE #36.  At a proceeding held on October 16, 2020, Magistrate Judge Orenstein certified that all discovery had closed and that the case was ready for trial, but for the filing of the Joint Pretrial Order ("JPTO") by December 4, 2020.  See Minute Entry (Oct. 16, 2020), DE #39.  Thereafter, citing the complexity of the case and the voluminous discovery documents, the parties requested and were granted two extensions of the deadline for filing their JPTO, which ultimately was extended to January 29, 2021.  See Order (Jan. 8, 2021); Order (Nov. 18, 2020).

      The parties did not docket their JPTO on January 29, 2021.  Instead, on January 21, 2021, plaintiffs filed a letter-motion seeking leave to serve what plaintiffs characterized as "supplemental expert reports" from two physicians: Dr. Richard Luciani, an obstetrician/gynecologist, and Dr. Daniel G. Adler, a pediatric neurologist.  See Pl. Mot. Both sets of defendants opposed the motion, arguing that, except for that portion of Dr. Adler's new report that updated the condition of the infant plaintiff, the recent reports of the two doctors were not proper supplements but instead raised new theories that should have been presented during the period authorized for expert discovery.  See Govt. Opp.; NYU Opp. Hence, the Court recounts the timing and content of plaintiffs' expert disclosures.

2

Along with their initial disclosures, plaintiffs had first served an expert report dated March 28, 2019, from Edgar O. Mandeville, M.D., an OB/GYN. See Govt. Opp., Ex. A, DE #48-1 at ECF p. 2. On July 13, 2020, plaintiffs timely served an expert report of Dr. Richard Luciani, also an OB/GYN. See Govt. Opp., Ex. B, DE #48-1 at ECF pp. 4-10. When the NYU Langone defendants questioned plaintiffs' designation of two experts in the same field, plaintiffs withdrew the report of Dr. Mandeville and indicated that they would rely only on Dr. Luciani. See Govt. Opp., Ex. C, DE #48-1 at ECF pp. 12-13. On January 7, 2021, long after discovery had closed and while the parties were preparing their JPTO, plaintiffs served a second report from Dr. Luciani, which is one of the disclosures at issue in the instant motion. See NYU Opp., Ex. A, DE #49-1 at ECF pp. 2-8. Defendants argue that the second report of Dr. Luciani raises "for the very first time a wholly new theory of allege[d] medical malpractice during the delivery of the infant." Govt. Opp. at 2; see NYU Opp. at 1 ("new allegation that the defendants 'attempted vacuum delivery at +1 station was also negligent and clearly increased the risk of intracranial fetal damage'").

Meanwhile, on January 7, 2019, plaintiffs had served an expert report from Dr. Daniel Adler, a pediatric neurologist. See Govt. Opp., Ex. D, DE #48-1 at ECF pp. 15-16. Exactly two years later, plaintiffs served a second report from Dr. Adler, dated January 7, 2021 (Govt. Opp., Ex. E, DE #48-1 at ECF pp. 18-29), which the defendants argue sets forth a "new expert theory on the etiology and timing of the child's brain injury." Govt. Opp. at 3. Thereafter, plaintiffs served a third report from Dr. Adler, dated January 19, 2021, stating that, having reviewed radiological imaging studies performed on the infant plaintiff, he reaffirmed the opinions set forth in his January 7, 2021 report. See NYU Opp., Ex. D, DE

3

#49-1 at ECF p. 63.

## DISCUSSION

### I. Violations of Judicial Scheduling Orders

#### A. Legal Standards

Plaintiffs' belated request to serve "supplemental" expert reports is devoid of any discussion of the governing legal standard for assessing such a request. Where, as here, a court has issued a scheduling order pursuant to Rule 16 of the Federal Rules of Civil Procedure (the "FRCP"), the Court must first address whether the party seeking leave has shown "good cause" for modifying that scheduling order. See Fed. R. Civ. P. 16(b)(4); Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 243-44 (2d Cir. 2007). It is the movant's burden to establish good cause for failing to comply with a court deadline. See Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000). "'Good cause' depends on the diligence of the moving party." Id. (quoting Fed. R. Civ. P. 16(b)); see Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir 2009). Consequently, absent a sufficient justification for the movant's delay, the Court should decline to grant an application to reopen discovery. See Saray Dokum ve Madeni Aksam Sanayi Turizm A.S. v. MTS Logistics Inc., 335 F.R.D. 50, 52-53 (S.D.N.Y. 2020); Baburam v. Fed. Express Corp., 318 F.R.D. 5, 8 (E.D.N.Y. 2016) (collecting cases).

Under Rule 26(a)(2)(B) of the FRCP, which governs expert disclosures, a party must provide from its expert "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). "'The expert's report operates to limit the scope of the testimony that can be elicited from the expert. Opinions that are not

4

disclosed in the expert's report cannot be offered.'" Camarata v. Experian Info. Sols., Inc., 16 Civ. 132 (AT) (HBP), 2018 WL 1738335, at *1 (S.D.N.Y. Mar. 5, 2018) (quoting LaSalle Bank Nat'l Ass'n v. CIBC Inc., No. 08 Civ. 8426(WHP)(HBP), 2012 WL 466785, at *9 (S.D.N.Y. Feb. 14, 2012)). "It is assumed that at the time an expert issues his report, that report reflects his full knowledge and complete opinions on the issues for which his opinion has been sought." Peterson v. Home Depot U.S.A., Inc., No. 11 Civ. 5747(ER), 2013 WL 5502816, at *3 (S.D.N.Y. Oct. 3, 2013) (internal quotation marks and citation omitted), reconsideration denied, 2014 WL 135562 (S.D.N.Y. Apr. 4, 2014); see Gyllenhammer v. Am. Nat'l Red Cross, 3:15-cv-1143 (BKS/DEP), 2018 WL 1956426, at *4 (N.D.N.Y. Jan. 23, 2018).

Pursuant to Rule 26(e), a party must supplement its Rule 26(a) disclosures, including expert disclosures, when that "party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process[.]" See Fed. R. Civ. P. 26(e)(1)(A). "Rule 26(e) is not, however, a vehicle to permit a party to serve a deficient opening report and then remedy the deficiency through the expedient of a 'supplemental' report." Lidle v. Cirrus Design Corp., No. 08 Civ. 1253(BSJ)(HBP), 2009 WL 4907201, at *5 (S.D.N.Y. Dec. 18, 2009); accord Camarata, 2018 WL 1738335, at *2. "If an expert's report 'does not rely [on] any information that was previously unknown or unavailable to him,' it is not an appropriate supplemental report under Rule 26." In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig., 263 F.Supp.3d 446, 452 (S.D.N.Y. 2017) (quoting Lidle, 2009 WL 4907201, at *5-6).

Similarly, under Rule 37(c), where a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. See Fed. R. Civ. P. 37(c)(1). "The purpose of [Rule 37(c)] is to prevent the practice of sandbagging an adversary with new evidence." Gotlin v. Lederman, No. 04–CV–3736 (ILG), 2009 WL 2843380, at *3 (E.D.N.Y. Sept. 1, 2009) (internal quotation marks and citation omitted).

B.   Dr. Luciani's "Supplemental" Report

Plaintiffs' first argument in support of Dr. Luciani's purported supplemental report seeks to use the original report of Dr. Mandeville to bootstrap the new opinions contained in Dr. Luciani's latest report. See Pl. Mot. at 2. Dr. Mandeville's report concluded that "the providers negligently attempted vaginal delivery via vacuum extraction from a station of the presenting head[,] which was contrary to the standard of care." Govt. Opp., Ex. A, DE #48-1 at ECF p. 2. However, it is undisputed that plaintiffs withdrew Dr. Mandeville's report, and substituted it with Dr. Luciani's original report. See Govt. Opp., Ex. C, DE #48-1 at ECF pp. 12-13. Having withdrawn Dr. Mandeville's report, plaintiffs' attempt to belatedly interject a new issue into the case results in unfair surprise to defendants. Dr. Luciani now asserts that "[a]ttempted vacuum delivery at plus 1 station was also negligent and clearly increased the risk of intracranial fetal damage." NYU Opp., Ex. A, DE #49-1 at ECF p. 8. Unlike Dr. Mandeville's report, which plaintiffs expressly abandoned, Dr. Luciani's original report contained no reference to the negligence of defendants in performing the vacuum extraction. See Govt. Opp., Ex. B, DE #48-1 at ECF pp. 4-10. Instead, Dr. Luciani's

original report was limited to his opining that defendants should have performed a delivery via Caesarean section earlier in time, not that the attempted vacuum delivery was otherwise negligently performed. See id. at ECF pp. 9-10. Accordingly, Dr. Luciani's second report does not "supplement" his original report, within the meaning of Rule 26(e).

Moreover, even if Dr. Mandeville's report were not a nullity, Dr. Luciani's new conclusion that defendants should not have attempted a vacuum delivery assumes that the infant plaintiff's head was positioned at "plus 1 station," see NYU Opp., Ex. A, DE #49-1 at ECF p. 8, whereas Dr. Mandeville's report was predicated on a materially different set of facts – to wit, that the vacuum extraction was attempted when the infant plaintiff's head was at a "plus 2 station," see Govt. Opp., Ex. A, DE #48-1 at ECF p. 2. As a result, Dr. Luciani's opinion regarding the attempted vacuum delivery must be considered "new" even when compared to Dr. Mandeville's report.

Finally, Dr. Luciani's new opinions are not based on information that was previously unknown or unavailable to plaintiffs. Nevertheless, plaintiffs offer no explanation for their delay in seeking leave of the Court, even after the discovery deadline was extended four times in this case, and the deadline for filing the parties' JPTO had twice been extended. Plaintiffs' failure to show diligence weighs heavily against their request for leave to supplement Dr. Luciani's report. See Gyllenhammer, 2018 WL 1956426, at *5; Peterson, 2013 WL 5502816, at *3; Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC, 282 F.R.D. 76, 79 (S.D.N.Y. 2012) ("[p]laintiffs cannot demonstrate that they acted with diligence sufficient to justify reopening expert discovery"); Prendergast v. Hobart Corp., No. 04-CV-5134 (SMG), 2010 WL 3199699, at *5 (E.D.N.Y. Aug. 12, 2010); Gotlin, 2009

7

843380, at *6-7; Lopez v. Louro, No. 01 Civ. 2490 JSM DF, 2002 WL 31682398, at *3 (S.D.N.Y. Nov. 27, 2002) (denying leave to serve untimely supplemental expert report in light of prior significant extensions to discovery schedule).

      C.     Dr. Adler's "Supplemental" Reports

Plaintiffs contend that Dr. Adler's "supplemental" reports are necessary to ensure "competent testimony about the infant plaintiff's current status." Pl. Mot. at 2. However, to the extent that Dr. Adler's second and third reports are based on an updated physical examination of the infant plaintiff, or updated medical records concerning the infant's current condition, defendants do not object to those opinions. See Govt. Opp. at 3; NYU Opp. at 2 n.2. Instead, defendants argue that Dr. Adler's second report contains new opinions regarding causation of the infant's injuries based on information to which plaintiffs had access for years.

Indeed, it was not until his January 7, 2021 report that Dr. Adler, for the first time, opined that the infant plaintiff's injury occurred at the time of his birth and in connection with the delivery. See Govt. Opp., Ex. E, DE #48-1 at ECF pp. 26-27 ("hypoxic injury to the brain of E.M.C. occurred on the day of his birth"; "hemorrhage in the cerebellum that evolved after birth is related to the delivery"; concluding that earlier delivery would have avoided permanent brain injury to infant). This constitutes a significant change from his prior report, which did not opine as to when or how the brain injury occurred. See Govt. Opp., Ex. D, DE #148-1 at pp. 15-16. At oral argument, plaintiffs argued that Dr. Adler has not offered a different theory of causation because his overall conclusion that the infant suffered a brain injury remains consistent. However, Dr. Adler's new opinion is clearly designed to fill the gaps in his original report. See United States v. City of New York, 637 F.Supp.2d 77, 107

8

(E.D.N.Y. 2009) (untimely proffered expert opinions "suggest that they were constructed to fill holes in the evidence that the City failed to gather during discovery"); Point Prods. A.G. v. Sony Music Ent., Inc., No. 93 Civ. 4001(NRB), 2004 WL 345551, at *9 (S.D.N.Y. Feb. 23, 2004) ("To accept the contention that the new affidavits merely support an initial position when they in fact expound a wholly new and complex approach designed to fill a significant and logical gap in the first report would eviscerate the purpose of the expert disclosure rules.").

In reaching this newly disclosed conclusion, Dr. Adler relies on fetal heart tracings that were "indicative of cord compression and fetal hypoxia" (Govt. Opp., Ex. E, DE #48-1 at ECF p. 27), which have been available to plaintiffs since 2018, see NYU Opp. at 2-3. Thus, the new opinions contained in Dr. Adler's second report are not premised on information that was unavailable to plaintiffs during the discovery period. Significantly, although plaintiffs blame the delay on Dr. Adler's lack of access to certain radiological images (see Reply in Support (Jan. 27, 2021) at 1, DE #52), Dr. Adler's January 7, 2021 report, which sets forth the new opinions, was created *before* he reviewed the images from non-party NYU Langone (Tisch), the hospital to which the infant plaintiff was transferred following his birth (see Affidavit of James Wilkens, Esq. (Feb. 4, 2021) ("Wilkens Aff.") ¶ 17, DE #53). In fact, Dr. Adler specifically acknowledged that he did not review the MRI and ultrasound images in preparing his January 7, 2021 report, and that thereafter, his opinions did not change upon his reviewing the images in preparation for his January 19, 2021 report. See NYU Opp., Ex. D, DE #49-1 at ECF p. 63 ("None of the opinions that I offered in my report of January 7, 2021 are changed by my review of the imaging studies."). As plaintiffs thus have no excuse for the delay in proffering Dr. Adler's opinions on causation, they fail to show good cause to justify

reopening discovery for the purpose of allowing them to "supplement" Dr. Adler's report.

Indeed, plaintiffs' counsel admits that the reason for expanding upon both Dr. Luciani's and Dr. Adler's original reports is counsel's realization that "both [original] reports should contain m[o]re detail." Wilkens Aff. ¶ 16. But as courts in this Circuit have repeatedly recognized, it is a misuse of the rules governing expert disclosure for plaintiffs to "serv[e] a deficient or bare-bones opening report . . . and then serv[e] a full and complete report merely by claiming that the second, complete report is a reply or a supplementation pursuant to Fed. R. Civ. P. 26(e)." Camarata, 2018 WL 1738335, at *2; see In re Bear Stearns, 263 F.Supp.3d at 451; Lidle, 2009 WL 4907201, at *5-6.

## II.  The Appropriate Remedy

Having determined that plaintiffs' failure to timely serve the newly proffered opinions of Dr. Luciani and Adler was not substantially justified, the Court next considers whether the remedy sought by defendants – preclusion – is appropriate in this case.

### A.  Legal Standards

In Softel, Inc. v. Dragon Medical and Scientific Communications, Inc., 118 F.3d 955, 961-63 (2d Cir. 1997), the Second Circuit upheld the lower court's preclusion of the only outside expert witness offered by plaintiffs, where plaintiffs had failed to comply with the court-imposed deadline for expert disclosures. The Court of Appeals identified the following factors for a court to consider in determining whether preclusion is an appropriate remedy: "'(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the

10

possibility of a continuance.'" Softel, 118 F.3d at 961 (quoting Outley v. City of New York, 837 F.2d 587 (2d Cir. 1988)). The balancing of these factors is entrusted to the Court's discretion, and no one factor is dispositive. See, e.g., In re Bear Stearns, 263 F.Supp.3d at 452; see also Softel, 118 F.3d at 961.

Unlike the situation in Softel, in this case, the preclusion of evidence of the experts' newly proffered opinions would not prevent Dr. Luciani or Dr. Adler from testifying about opinions that were timely disclosed in their earlier reports. Nevertheless, some courts have considered the *Softel* factors in considering whether to allow expert opinions that were not disclosed in reports served during the court-authorized discovery period. See Speedfit LLC v. Woodway USA, Inc., CV 13-1276 (KAM) (AKT), 2019 WL 1429609, at *3-4 (E.D.N.Y. Mar. 28, 2019) (finding that Softel "provide[s] guidance" in determining whether supplemental expert report that asserted new theories of damages should be precluded); Lidle, 2009 WL 4907201, at *6-7 ("assuming that the *Softel* factors are applicable notwithstanding plaintiffs' [use of] multiple experts . . . ."); Giladi v. Strauch, No. 94 Civ. 3976 RMBHBP, 2001 WL 388052, at *5 (S.D.N.Y. Apr. 16, 2001) ("Even where there has been an unjustified, prejudicial violation of Rule 26(a)(2), our Court of Appeals has cautioned against an automatic sanction of preclusion"). This Court therefore has considered and balanced the *Softel* factors in exercising its discretion in determining the appropriate remedy for plaintiffs' belated disclosures of new expert opinions.

B.  Dr. Luciani's Newly Proffered Opinions

As to the first *Softel* factor (explanation for failure to comply with the discovery schedule), as discussed above, Dr. Luciani's "supplemental" report asserts an entirely new

11

theory of causation that was not disclosed to defendants during either the fact or expert discovery periods. As to the second factor (importance of the expert testimony), plaintiffs seek to bolster Dr. Luciani's earlier expert report so as to strengthen their claim on causation. Although plaintiffs do not describe the effect on their case if Dr. Luciani's supplemental report is excluded, the fact remains that even if preclusion is ordered, Dr. Luciani will be able to testify as to the opinions he disclosed in his first report. Cf. Softel, 118 F.3d at 962 (the importance of the testimony of plaintiff's precluded witness cut "only slightly" in plaintiff's favor, where plaintiff could use its president as an expert). With respect to the third factor (prejudice to the defendant), the Court finds that defendants would be substantially prejudiced by "significant shifts in the theories offered against" them after discovery has closed. See id. As to the likelihood of a continuance, although no trial date has been set, given the numerous extensions of the discovery deadlines, any further delay in this case would be unreasonable in the absence of any explanation by plaintiffs for their failure to comply with the Court's orders. See id. at 962-63.

      C.     Dr. Adler's Newly Proffered Opinions

The *Softel* factors likewise weigh against granting plaintiffs' motion to supplement Dr. Adler's report. As discussed above, plaintiffs have failed to offer any justifiable explanation for their failure to disclose Dr. Adler's more recent opinions within the discovery period. Since Dr. Adler is not precluded from testifying to the opinions that plaintiffs timely disclosed, plaintiffs will still have the benefit of Dr. Adler's testimony. On the other hand, defendants would be significantly prejudiced by the injection of Dr. Adler's new theory of causation at this stage of the case. Finally, a continuance would not be appropriate in the absence of any

12

valid explanation for plaintiffs' delays.

In sum, plaintiffs will not be permitted to offer new opinions from their experts that should have been included in their original reports. Plaintiffs had ample opportunity to disclose Dr. Luciani's and Dr. Adler's recently added opinions before discovery closed, and offer no persuasive reason why they failed to do so prior to the court-ordered deadline for expert discovery, which was repeatedly extended. Considering plaintiffs' lack of diligence, the Court denies their request to serve supplemental reports to the extent discussed above.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to supplement the expert reports of Dr. Luciani and Dr. Adler is denied, except insofar as Dr. Adler's second and third reports are based on updated medical examinations and treatment records.

Any objections to the rulings contained in this Memorandum and Order must be filed with the Honorable Eric R. Komitee on or before May 6, 2021. Failure to file objections in a timely manner may waive a right to appeal the District Court order.

SO ORDERED.

Dated:      Brooklyn, New York
            April 22, 2021

/s/ *Roanne L. Mann*
ROANNE L. MANN
UNITED STATES MAGISTRATE JUDGE